UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
CATHLEEN SARNO,

                Plaintiff,

    v.

SUN LIFE AND HEALTH INSURANCE
COMPANY (U.S.), NIKON INC., and
NIKON INC. EMPLOYEE BENEFIT PLAN,

                Defendants.
----------------------------------------------------------X

**REPORT AND RECOMMENDATION**

2:22-CV-00968 (JMA) (LGD)

**LEE G. DUNST**, Magistrate Judge:

      Presently before the Court is the Motion to Dismiss ("Motion") filed by Defendants Nikon Inc. ("Nikon") and Nikon Inc. Employee Benefit Plan (together with Nikon, the "Nikon Defendants"), seeking to dismiss Plaintiff's Second Amended Complaint ("SAC") which asserts three causes of action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132.[1]  Electronic Case File Number ("ECF No.") 45.  On November 1, 2023, District Judge Joan M. Azrack referred the Motion to the undersigned for a Report and Recommendation.  November 1, 2023 Order.  For the reasons set forth below, the undersigned recommends that the Court grant the Motion.

**I.    BACKGROUND**

    **A.    Factual Background[2]**

      Nicholas Sarno ("Mr. Sarno") was an employee at Nikon for nearly thirty-five years.

---

[1] 29 U.S.C. § 1132 is the codified provision of the Employee Retirement Income Security Act ("ERISA") § 502.  These provision numbers are often used interchangeably.  *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 204 (2004).

[2] The relevant alleged facts set forth herein are taken from the Seconded Amended Complaint ("SAC") and are accepted as true for purposes of ruling on the Motion.  *See Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 462 (2d Cir. 2019) ("The court accepts as true all well-pleaded factual allegations in the complaint, [and] draws all reasonable inferences in favor of the nonmoving party." (internal quotations omitted)).

SAC, ECF No. 37 ¶¶ 3, 17, 28.  As a benefit of his employment, Mr. Sarno was insured for group term life insurance (the "Group Policy") under the Nikon Inc. Employee Benefit Plan (the "Plan") funded by Defendant Sun Life and Health Insurance Company ("Sun Life").  *Id.* ¶¶ 4, 29.  The Summary Plan Description ("SPD") for the Group Policy listed Nikon as both the Plan Sponsor and Plan Administrator.  *Id.* ¶¶ 22, 30.  As Plan Administrator, Nikon had "authority to control and manage the operation and administration of the Plan."  *Id.* ¶ 31; ECF No. 45-2.[3] Nikon, however, delegated all discretionary authority regarding the administration of the Group Policy to Sun Life.  SAC ¶¶ 23, 33.  In particular, Sun Life had the discretion and the responsibility for making all claims determinations, paying out benefits, and handling any appeals from those determinations.  ECF No. 45-3 at 23-25.  Sun Life also was the primary point of contact regarding Mr. Sarno's rights under the Group Policy.  SAC ¶ 33.

The Group Policy provided two benefits that are relevant to this case.  The Group Policy entitled an insured to an "Accelerated Benefit" payment of $500,000, provided that the insured was diagnosed as terminally ill with a life expectancy of twelve months or less.  *Id.* ¶¶ 38-39; ECF No. 45-3 at 15.  Sun Life had the discretion to determine eligibility for and to grant or deny the Accelerated Benefit.  ECF No. 45-3 at 15-16.  The Group Policy also provided an insured with the ability to convert the Group Policy to an individual life insurance policy ("Individual Policy") within thirty-one days of the date when the Group Policy terminated.  SAC ¶¶ 9, 49; ECF No. 45-3 at 17-18.  Similarly, Sun Life had the discretion to determine eligibility for and to grant or deny a conversion application.  *Id.*  For both the Accelerated Benefit and the conversion

---

[3] Courts routinely consider plan documents for purposes of deciding a motion to dismiss in ERISA cases because the plan itself is integral to and incorporated by reference in the complaint, as it was here.  *See Kwasnik v. Oxford Health Ins., Inc.*, No. 22-CV-4767, 2023 WL 5050952, at *4 n.12 (S.D.N.Y. Aug. 8, 2023); *Guzman v. Bldg. Serv. 32BJ Pension Fund*, 2023 WL 2526093, at *8 (S.D.N.Y. Mar. 15, 2023) (collecting cases); SAC ¶¶ 30-33, 38-39, 49-50 (referencing the SPD for the Group Policy and quoting from the plan documents about eligibility for the Accelerated Benefit).

privilege, an applicant had to submit his or her request directly to Sun Life.  ECF No. 45-3 at 15, 18.

In September 2017, Mr. Sarno was diagnosed with Stage IV Pancreatic Cancer, a disease that carries a life expectancy of about one year after diagnosis, which would have potentially qualified him to receive the Accelerated Benefit.  SAC ¶¶ 2, 36-37.  In October 2017, Mr. Sarno began a disability leave of absence from Nikon.  *Id.* ¶ 40.  Sun Life became aware of Mr. Sarno's disease that same month when Nikon faxed a "Notice and Proof of Claim for Disability Benefits" to Sun Life on behalf of Mr. Sarno.  *Id.* ¶ 41.  Throughout 2018 and up until his death in the fall of 2019, Mr. Sarno spoke with Sun Life representatives about his benefit options but was never informed about his right to the Accelerated Benefit.  *Id.* ¶¶ 43-44, 46.  Similarly during that time, Mr. Sarno spoke with representatives of Nikon's human resources department, discussing topics including the continuation of Mr. Sarno's life insurance coverage.  *Id.* ¶ 45.  The Nikon representatives never mentioned Mr. Sarno's right to the Accelerated Benefit.  *Id.* ¶¶ 45-46.  Mr. Sarno never exercised his right to the Accelerated Benefit.  *Id.* ¶ 7.

In the summer of 2019, Mr. Sarno also was entitled to convert his Group Policy to an Individual Policy.  *Id.* ¶ 50.  According to the SPD, Mr. Sarno's Group Policy was set to terminate on July 2, 2019—his sixty-fifth birthday.  *Id.*  He would then have thirty-one days— until August 2, 2019—to convert his Group Policy to an Individual Policy.  *Id.*  On July 22, 2019, Mr. Sarno spoke over the phone with a Sun Life representative about his conversion rights.  *Id.* ¶ 54.  On the call, Mr. Sarno confirmed that he wanted to convert to an Individual Policy (providing for $761,000 of life insurance coverage) and asked about the deadlines involved in the conversion process.  *Id.* ¶¶ 55-57.  During that same conversation, the Sun Life representative confirmed that Mr. Sarno had met the thirty-one day deadline because he had called them within

3

the deadline and that there was nothing left to know. *Id.* ¶¶ 57-58. Critically, the Sun Life representative failed to inform Mr. Sarno that his conversion would not be complete until he filled out certain documents by a new deadline—August 26, 2019. *Id.* ¶¶ 58-60. After the call, Sun Life sent these documents to the wrong email address for Mr. Sarno. *Id.* ¶¶ 62-64. Notably, Sun Life does not dispute this failure. *Id.* ¶ 64. On September 9, 2019, Mr. Sarno called Sun Life to ask about changing his Individual Policy to reduce the premiums. *Id.* ¶ 69. On the call, the Sun Life representative, however, informed Mr. Sarno that because he never filled out the proper documents, he never officially converted the Group Policy to an Individual Policy. *Id.* ¶ 71. The Sun Life representative agreed to once again forward the documents to Mr. Sarno. *Id.* ¶ 72. Sun Life, however, denied the requested conversion, despite Mr. Sarno completing the documents and overnighting them to Sun Life the next day, on September 10, 2019. *Id.* ¶¶ 73-75. After Mr. Sarno's death on October 12, 2019, Mrs. Cathleen Sarno ("Plaintiff") took up Mr. Sarno's appeal to Sun Life. *Id.* ¶¶ 78-79. Sun Life denied the appeal in April 2020. *Id.* ¶ 80.

At no point throughout the conversion process did either Mr. or Mrs. Sarno speak with a representative of the Nikon Defendants about the conversion. *See generally id*. Additionally, at no point did either Mr. or Mrs. Sarno discuss the Accelerated Benefit with Nikon representatives. *Id.*

### B. Procedural Background

Plaintiff commenced this action as a beneficiary of the aforementioned ERISA plan on February 22, 2022. ECF No. 1. Plaintiff then filed an Amended Complaint on May 13, 2022 (ECF No. 22) and, after unsuccessful mediation, filed a Second Amended Complaint, on December 5, 2022 (ECF No. 37), that is the subject of the Motion to dismiss presently before the

4

Court. The SAC asserts three causes of action[4] against Sun Life and the Nikon Defendants:

(1) breach of a fiduciary duty for failure to adequately inform Mr. Sarno of his right to an Accelerated Benefit payment, brought under ERISA, 29 U.S.C. § 1132(a)(3);

(2) breach of a fiduciary duty for misleading Mr. Sarno about his deadline to submit his conversion application, brought under ERISA, 29 U.S.C. § 1132(a)(3); and

(3) to recover benefits due under the Plan, brought under ERISA, 29 U.S.C. § 1132(a)(1)(B).

In each count, Plaintiff seeks payment of the $500,000 Accelerated Benefit and all benefits due under the terms of the Individual Policy. SAC ¶¶ 92-93, 114-15, 119-20.

On April 17, 2023, the Nikon Defendants filed a motion to dismiss the SAC as against them only. ECF No. 45. On November 1, 2023, District Judge Joan M. Azrack referred the motion to the undersigned for a Report and Recommendation. November 1, 2023 Order. Defendant Sun Life has not filed a motion to dismiss the SAC.

## II. LEGAL STANDARD

Courts evaluate motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure by determining whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). That standard requires the Court to accept as true all well-pled factual allegations in the SAC and consider attachments

---

[4] Plaintiff argues that the SAC alternatively pleads a duty to monitor claim despite not clearly doing so in the SAC. ECF No. 45-4 at 17 ("Pl. Mem."); *see generally* SAC. The Nikon Defendants dispute this and alternatively argue that such a claim should be dismissed as well. ECF No. 45-1 at 22 ("Def. Mem."). The Court does not need to address whether Plaintiff pleads a breach of a duty to monitor claim because the Court recommends dismissal of all breach of duty claims for the reasons stated in Part III.B.

5

to and documents incorporated by reference in the SAC. *See Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 462 (2d Cir. 2019). While the Court accepts the SAC's well-pled allegations as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Gamm*, 944 F.3d at 462 (explaining that a complaint must contain "more than an unadorned, the defendant-unlawfully-harmed-me accusation"). Determining whether the SAC states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

"Dismissal is proper under Rule 12(b)(1) for lack of subject matter jurisdiction 'when the district court lacks the statutory or constitutional power to adjudicate' the claim." *Baskerville v. Admin. for Children's Servs.*, No. 19-CV-602, 2020 WL 59826, at *1 (E.D.N.Y. Jan. 6, 2020) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). Motions to dismiss under Rule 12(b)(1) are governed by a substantively identical standard as motions under Rule 12(b)(6). *See M.V.B. Collision Inc. v. Progressive Ins. Co.*, No. 23-CV-221, 2023 WL 8113923, at *2 (E.D.N.Y. Nov. 22, 2023). "The only 'substantive difference' between the standards of review is that under Rule 12(b)(1), 'the party invoking the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas' under Rule 12(b)(6), 'the movant bears the burden of proof on a motion to dismiss[.]'" *Baskerville*, 2020 WL 59826, at *1 (quoting *Seemann v. U.S. Postal Serv.*, No. 11-CV-206, 2012 WL 1999847, at *1 (D. Vt. June 4, 2012). Furthermore, dismissals under Rule 12(b)(1) "must be without prejudice, rather than with prejudice." *Jusino v. Fed'n of Catholic Teachers, Inc.*, 54 F.4th 95, 106 (2d Cir. 2022), *cert. denied*, 143 S. Ct. 1056 (2023) (quoting *Green v. Dep't of Educ. of City of New York*, 16 F.4th 1070, 1074 (2d Cir. 2021)).

6

## III. DISCUSSION

For the reasons discussed below, the Court recommends granting the Nikon Defendants' Motion to dismiss Count 3 for lack of standing under Article III of the U.S. Constitution and to dismiss Counts 1 and 2 as duplicative of Count 3.[5]

### A.   29 U.S.C. § 1132(a)(1)(B) (Count 3)

Plaintiff seeks to recover benefits due under the Plan pursuant to ERISA § 1132(a)(1)(B) based on Defendants (1) failing to adequately inform Mr. Sarno of his Accelerated Benefit right and (2) affirmatively misleading Mr. Sarno about the deadline to convert the Group Policy to an Individual Policy.  SAC ¶¶ 116-20.  As a result, Plaintiff alleges that, as the designated beneficiary of the Group Policy and Individual Policy, she was denied the Accelerated Benefit and all death benefits due to her under the Individual Policy.  *Id.* ¶ 118.  The Nikon Defendants argue, among other things, that Plaintiff lacks Article III standing to bring this ERISA claim against them because Plaintiff does not, and cannot, allege that the Nikon Defendants played any role with respect to the lack of payment of the Accelerated Benefit and the denial of the conversion.  ECF No. 45-1 at 11-12 ("Def. Mem.").  Thus, the Nikon Defendants argue that Plaintiff does not adequately allege causation as against them to confer Article III standing.  *Id.* Plaintiff argues that she adequately alleges causation because the Nikon Defendants should have advised Mr. Sarno about the Accelerated Benefit and the conversion right.  ECF No. 45-4 at 18-20, 22-23 ("Pl. Mem.").  As set forth herein, the Court agrees with the Nikon Defendants and finds that there is no causation linking the Nikon Defendants to Plaintiff's alleged injury.

To bring suit under ERISA, a plaintiff must have both a cause of action and Article III

---

[5] Given that the Court recommends granting the motion to dismiss on the grounds discussed below, the Court need not address the remaining arguments by the Nikon Defendants in support of their motion to dismiss. *See, e.g., Brady v. Top Ships, Inc.*, No. 17-CV-4987, 2019 WL 3553999, at *17 (E.D.N.Y. Aug. 5, 2019), *aff'd sub nom. Onel v. Top Ships, Inc.*, 806 F. App'x 64 (2d Cir. 2020).

7

standing. *See Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016). "A statutory cause of action provided in ERISA cannot, by itself, confer standing on a plaintiff to bring suit." *Plutzer v. Bankers Tr. Co. of S. Dakota*, No. 21-CV-3632, 2022 WL 596356, at *4 (S.D.N.Y. Feb. 28, 2022), *aff'd sub nom. Plutzer v. Bankers Tr. Co. of S. Dakota*, No. 22-CV-561, 2022 WL 17086483 (2d Cir. Nov. 21, 2022).

To establish Article III standing, a plaintiff, at a minimum, most allege three things: "(1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Kraus v. Snow Teeth Whitening LLC*, No. 20-CV-6085, 2022 WL 4642170, at *3 (E.D.N.Y. Sept. 15, 2022), *report and recommendation adopted*, No. 20-CV-6085, 2022 WL 4662819 (E.D.N.Y. Sept. 30, 2022) (quoting *Akridge v. Whole Foods Mkt. Grp., Inc.*, 20-CV-10900, 2022 WL 955945 at *4 (S.D.N.Y. Mar. 30, 2022)). "If 'the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019)).

The causation or "traceability" requirement for Article III standing means that a plaintiff must show a "causal nexus between the defendant's alleged conduct and the injury." *M.V.B. Collision Inc. v. Progressive Ins. Co.*, No. 23-CV-221, 2023 WL 8113923, at *4 (E.D.N.Y. Nov. 22, 2023). The causal connection element does not create a particularly "onerous standard" and it is a "standard lower than that of proximate causation." *Gonzalez v. Northwell Health, Inc.*, 632 F. Supp. 3d 148, 161 (E.D.N.Y. 2022). "As compared to the standard for the merits stage, the pleading standard 'for Article III standing is not whether the alleged injury is *plausibly* fairly

8

traceable, but, rather whether the injury is *possibly* fairly traceable.'" *Hoeffner v. D'Amato*, 605 F. Supp. 3d 467, 476 (E.D.N.Y. 2022), *reconsideration denied*, No. 09-CV-3160, 2023 WL 2632501 (E.D.N.Y. Mar. 24, 2023) (quoting *Dennis v. JPMorgan Chase & Co.*, 343 F. Supp. 3d 122, 156 (S.D.N.Y. 2018)) (emphasis in original).

"While a causation chain for purposes of Article III standing does not fail simply because it has several links, those links cannot be 'hypothetical or tenuous' and must 'remain plausible.' . . . What matters is not the 'length of the chain of causation,' but rather the 'plausibility of the links that comprise the chain.'" *M.V.B. Collision*, 2023 WL 8113923, at *4 (quoting *Zanotti v. Invention Submission Corp.*, No. 18-CV-5893, 2020 WL 2857304, at *8 (S.D.N.Y. June 2, 2020)). Such "line of causation" cannot be "attenuated" and must be supported by more than "hypothetical, conclusory, and implausible assertions." *Id.* "Though 'a defendant's challenged actions' need not be 'the very last step in a chain of events leading to an alleged injury,' a plaintiff must 'plead facts indicating that a defendant's actions had a determinative or coercive effect upon the action of someone else who directly caused the alleged injury.'" *Id.* at *5 (quoting *Nat'l Council of La Ram v. Mukasey*, 283 F. App'x 848, 851 (2d Cir. 2008)). Thus, "causation turns on the degree to which the defendant's actions constrained or influenced the decision of the final actor in the chain of causation." *Carver v. City of New York*, 621 F.3d 221, 226 (2d Cir. 2010).

Here, Plaintiff fails to plead an adequate line of causation between her alleged injury and the Nikon Defendants' actions. Plaintiff argues that it is sufficient to allege that the Nikon Defendants "should have advised Mr. Sarno on his conversion right." Pl. Mem. at 23. As the Nikon Defendants point out, and the Court agrees, however, Plaintiff does not and cannot allege that the Nikon Defendants had any role in the conversion process nor any role in determining the

9

eligibility of the Accelerated Benefit. Def. Mem. at 11. It is undisputed that Sun Life was responsible for that. SAC ¶ 49; Pl. Mem. at 2. Further, whether the Nikon Defendants should have advised Mr. Sarno about his rights is irrelevant for causation purposes. Any advice (or lack thereof) by the Nikon Defendants did not *cause* Plaintiff's ultimate injury—the nonpayment of the Accelerated Benefit and the denial of the conversion of the Group Policy to an Individual Policy. *See Plutzer v. Bankers Tr. Co. of S. Dakota*, No. 21-CV-3632, 2022 WL 596356, at *7 (S.D.N.Y. Feb. 28, 2022), *aff'd sub nom. Plutzer v. Bankers Tr. Co. of S. Dakota*, No. 22-CV-561, 2022 WL 17086483 (2d Cir. Nov. 21, 2022) (finding no "cognizable nexus" between defendant's conduct and any harm to plaintiff); *In re Express Scripts/Anthem ERISA Litig.*, 285 F. Supp. 3d 655, 672-73 (S.D.N.Y. 2018), *aff'd sub nom. Doe 1 v. Express Scripts, Inc.*, 837 F. App'x 44 (2d Cir. 2020) (finding plaintiffs' injury not "fairly traceable" to defendant's conduct).

Further, no causal connection exists between the Nikon Defendants' conduct and Plaintiff's injury particularly because Sun Life was responsible for granting or denying benefits or granting or denying any conversion application. SAC ¶¶ 23, 33, 54-58. The SAC alleges that Sun Life was the primary point of contact and exercised sole authority on claims made under the Plan, including any potential Accelerated Benefit. *Id.* ¶ 33. The SAC also alleges that Sun Life was the ultimate authority to accept or deny any conversions of the Group Policy. *Id.* Indeed, the SAC cites numerous examples of conversations and communications between Mr. Sarno, Mrs. Sarno, and Sun Life. *Id.* ¶¶ 54-59, 72-76, 79-80. On the other hand, the SAC does not contain a single fact that alleges that the Nikon Defendants communicated with either Mr. or Mrs. Sarno about an Accelerated Benefit payment. *See generally id.* Additionally, the SAC contains no allegations that Mr. or Mrs. Sarno communicated with the Nikon Defendants about any conversion deadlines. *Id.* Finally, the SAC contains no allegations that the Nikon

10

Defendants had a determinative or coercive effect upon Sun Life, which was ultimately responsible for allegedly misleading Mr. Sarno about the deadlines for converting his Group Policy and for determining eligibility and eventually paying any Accelerated Benefit. *See M.V.B. Collision*, 2023 WL 8113923, at *6 (finding no standing because plaintiff "failed to sufficiently allege that Defendant's actions had a determinative or coercive effect . . . causing its alleged injury"); *Xu v. United States Dep't of Hous. & Urb. Dev.*, No. 22-CV-3539, 2023 WL 5740416, at *4 (E.D.N.Y. Sept. 6, 2023) (finding no standing where defendant was not involved in plaintiff's rental increase "either directly or indirectly" since defendant "play[ed] no role in determining plaintiff's rent"); *cf. Est. of Kenyon v. L + M Healthcare Health Reimbursement Acct.*, 404 F. Supp. 3d 627, 633 (D. Conn. 2019) (dismissing ERISA claim against defendant, observing that the Second Circuit focuses on "a potential defendant's degree of control over the ERISA benefits process, not simply the label that a potential defendant wore under an ERISA plan"); *Evans v. Emp. Benefit Plan, Camp Dresser & McKee, Inc.*, 311 F. App'x 556, 559 (3d Cir. 2009) (dismissing ERISA claim against a plan administrator that did not have "any role in benefits determinations"); *Prof'l Orthopedic Assocs., PA v. Excellus Blue Cross Blue Shield*, No. 14-6950, 2015 WL 4387981, at *12 (D.N.J. July 15, 2015) (dismissing ERISA claim against nominal plan administrator that did not "exercise[] any discretion or control over the administration benefits").

As Plaintiff concedes in her briefs, "[b]eyond a doubt, Sun Life is the primary villain in this story." Pl. Mem. at 1. While the Court does not take a position regarding Defendant Sun Life, the Court finds that the events in the SAC were not caused by the Nikon Defendants, and thus, they should be dismissed from Plaintiff's ERISA claim to recover benefits. Therefore, the Court recommends dismissal of Count 3 against the Nikon Defendants.

11

### B.     29 U.S.C. § 1132(a)(3) (Counts 1 and 2)

Plaintiff seeks to recover the Accelerated Benefit, in the amount of $500,000 (Count 1), and the benefits due to her under a converted Individual Policy (Count 2), pursuant to ERISA § 1132(a)(3). SAC ¶¶ 85-115. The Nikon Defendants argue, among other things, that these two breaches of fiduciary duty claims fail as a matter of law because they are duplicative of Plaintiff's ERISA § 1132(a)(1)(B) claim (Count 3). Def. Mem. at 12-14. With Counts 1 and 2, Plaintiff relies on the same set of facts and seeks the same relief as Count 3—the life insurance benefits she claims she is owed. *Id.* Plaintiff argues that she may recover under both ERISA sections, so long as the relief granted under Section 1132(a)(3) is "appropriate equitable relief," and thus, because appropriate equitable relief lies within the Court's discretion, it is not proper at this stage to dismiss the Section 1132(a)(3) claims. Pl. Mem. at 23-24. The Court agrees with the Nikon Defendants and finds that Counts 1 and 2 are duplicative of Count 3 and should be dismissed.

Section 1132(a)(3) provides that a plaintiff can "obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). The Supreme Court described this section as a "catchall provision" that offers "appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). The Court further noted that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" *Id.* at 515. Accordingly, "courts in this Circuit have repeatedly rejected attempts to repackage claims for wrongful denial of benefits under Section 502(a)(1) as claims for breaches of fiduciary duties under Section 502(a)(3)." *Benson v. Tiffany & Co.*, No. 20-CV-1289, 2021 WL 1864035, at *12 (S.D.N.Y. May 10, 2021) (quoting *Xiaohong Xie v.*

12

*JPMorgan Chase Short-Term Disability Plan*, No. 15-CV-4546, 2017 WL 2462675, at *4 (S.D.N.Y. June 7, 2017)). "While a plaintiff's claim for relief under § 502(a)(1)(B) does not necessarily preclude a claim under § 502(a)(3), the law is clear that a § 502(a)(3) claim cannot exist solely as a second route to the damages sought under § 502(a)(1)(B)." *Id.* at *13. Further, where a plaintiff seeks "only money damages" under Section 1132(a)(3) that "relief is not cognizable" under that Section. *Guerrero v. FJC Sec. Servs. Inc.*, 423 F. App'x 14, 17 (2d Cir. 2011); *see also Jeffrey Farkas, M.D., LLC v. Cigna Health & Life Ins. Co.*, 386 F. Supp. 3d 238, 244 (E.D.N.Y. 2019) (same).

Here, it is clear from the SAC that Counts 1 and 2 are duplicative of Count 3, in that they are just repackaged claims for the same benefits. Plaintiff relies on the same set of facts and seeks the same set of relief—the life insurance benefits. *Compare* SAC ¶¶ 91-92, 114-15 *with* 119-20. Nowhere in Counts 1 and 2 does Plaintiff seek equitable relief. SAC ¶¶ 85-115. And even if she did, the claims are still just seeking the same relief as Count 3. *See Benson*, 2021 WL 1864035, at *13 (granting motion to dismiss ERISA fiduciary claims as duplicative because "the gravamen of [Plaintiff's] claim is a claim for monetary compensation for Defendants' alleged failure to comply with the provisions of the Plan" (quoting *Harrison v. Metro. Life Ins. Co.*, 417 F. Supp. 2d 424, 433-34 (S.D.N.Y. 2006))). Thus, where, as here, Plaintiff seeks the same relief as her Section 1132(a)(1)(B) claim, the Court should dismiss the fiduciary claims, even at this early stage in the litigation. *See Guzman v. Bldg. Serv. 32BJ Pension Fund*, No. 22-CV-1916, 2023 WL 8039261, at *2 (S.D.N.Y. Nov. 20, 2023) (granting motion to dismiss ERISA fiduciary claims where "there is no need on the facts of this case to also allow equitable relief"); *Jeffrey Farkas*, 386 F. Supp. 3d at 247 (granting summary judgment on ERISA fiduciary claims where "the essence of the claim is one for damages for alleged underpayment" (quoting *LI*

13

*Neuroscience Specialists v. Blue Cross Blue Shield of Fl.*, 361 F. Supp. 3d 348, 356 (E.D.N.Y. 2019))).

Therefore, for the reasons stated above, the Court recommends dismissal of Counts 1 and 2 against the Nikon Defendants.

## IV. CONCLUSION

For the reasons stated above, the Court recommends that the Nikon Defendants' Motion (ECF No. 45) be granted without prejudice.

## V. OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Azrack. FAILURE TO FILE TIMELY OBJECTIONS SHALL CONSTITUTE A WAIVER OF THOSE OBJECTIONS BOTH IN THE DISTRICT COURT AND ON LATER APPEAL TO THE UNITED STATES COURT OF APPEALS. *See Thomas v. Arn*, 474 U.S. 140, 154-55 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *F.D.I.C. v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995).

SO ORDERED:

Dated: Central Islip, New York
January 25, 2024

s/ Lee G. Dusnt
_____

**LEE G. DUNST**
United States Magistrate Judge