UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X  For Online Publication Only

CATHLEEN SARNO,

                                      **ORDER**

                  Plaintiff,      22-CV-968 (JMA) (LGD)

      -against-

SUN LIFE AND HEALTH INSURANCE
COMPANY (U.S.), NIKON INC., and
NIKON INC. EMPLOYEE BENEFIT PLAN,

                Defendants.
-----------------------------------------------------------------------X

**AZRACK, United States District Judge:**

      Presently before the Court is the Motion to Dismiss filed by Defendants Nikon and Nikon Inc. Employee Benefit Plan (the "Plan" and together with Nikon, the "Nikon Defendants"). Defendant Sun Life did not file a motion to dismiss. After the Court referred the Motion to Magistrate Judge Lee G. Dunst, Judge Dunst issued a Report and Recommendation dated January 25, 2024 (the "R&R") that recommends the Motion be granted and Plaintiff's claims against the Nikon Defendants be dismissed without prejudice.[1] Plaintiff filed timely objections to the R&R. For the reasons set forth below, the Court adopts the R&R in part and overrules it in part. Specifically, the Court dismisses Counts 2 and 3 against Nikon and Counts 1 and 2 against the Plan and otherwise denies the Motion.

**A. Dismissal of Counts 1 and 2 as Duplicative of Count 3**

      The R&R recommends that Counts 1 and 2 of the SAC be dismissed as duplicative of Count 3. As explained below, the Court concludes that Counts 1 and 2 should not be dismissed on this basis and, accordingly, declines to adopt the R&R's recommendation on this point. To explain

---

[1] Capitalized terms not defined in this Memorandum and Order have the meaning assigned to them in the R&R.

this conclusion, the Court will recount the relevant allegations in the SAC concerning Plaintiff's claims and the relief she seeks in both the SAC and as set forth in her motion papers.

Counts 1 and 2 are relatively straightforward and allege that Defendants violated 29 U.S.C. § 1132(a)(3) by breaching their fiduciary duties. This provision of ERISA authorizes a beneficiary of an "employee benefit plan to bring a civil action to obtain 'appropriate equitable relief' to redress violations of ERISA Subchapter I, including, as relevant here, fiduciary breaches." Sullivan-Mestecky v. Verizon Commc'ns Inc., 961 F.3d 91, 98–99 (2d Cir. 2020) (quoting § 1132(a)(3).)

Specifically, Count 1 alleges that the Nikon Defendants and Sun Life (collectively, the "Defendants") breached their fiduciary duties by not adequately informing Mr. Sarno about the Group Policy's Accelerated Benefit. Count 2 alleges that Defendants breached their fiduciary duties by misleading Mr. Sarno about his deadline to submit a conversion application. The bulk of the allegations in Count 2 concern Sun Life's acts and omissions, including a Sun Life representative's statement to Mr. Sarno indicating that his July 22, 2019 phone call satisfied the deadline for seeking conversion of his Group Policy to an Individual Policy. Count 2, however, also alleges that: "Nikon, as Mr. Sarno's employer and the Plan Sponsor and Plan Administrator identified in the Group Policy SPD, had a fiduciary duty to ensure that Mr. Sarno was fully cognizant of his conversion right and of any applicable deadlines. Nikon also had a duty to ensure that Sun Life, as Nikon's agent, fulfilled its fiduciary responsibilities to the Sarnos." (SAC ¶ 111.)

Count 3 alleges the same breaches of fiduciary duty underlying Counts 1 and 2 but pursues those claims, without any further explanation, under 29 U.S.C. § 1132(a)(1)(B). This provision of ERISA empowers a "'beneficiary' to bring a civil action 'to recover benefits due to him under the terms of his plan." Sullivan-Mestecky, 961 F.3d at 97 (quoting § 1132(a)(1)(B)) (emphasis added).

While it is easy to comprehend the SAC's factual and legal bases for alleging that Nikon breached its purported fiduciary duties in Counts 1 and 2, the SAC and Plaintiff's motion papers are muddled and confusing concerning the <u>relief</u> sought for Counts 1 and 2. The SAC and Plaintiff's motion papers do not identify what, if any, equitable relief they seek against Nikon for Counts 1 and 2. (<u>See</u> R&R at 13 ("Nowhere in Counts 1 and 2 does Plaintiff seek equitable relief.").)

The SAC's prayer for relief seeks a judgment "against Defendants jointly and severally" for "[p]ayment of the $500,000 Accelerated Benefit amount, and (ii) all benefits due to Plaintiff under the terms of the Individual Policy." (SAC at 23.) The prayer for relief also seeks "Enforcement of Plaintiff's rights under the terms of the Individual Policy" and "such other and further relief as this Court deems just and proper." (<u>Id.</u>)

Despite the prayer for relief set out above, in responding to the standing argument raised in the Motion, Plaintiff's opposition brief asserts that her injuries in Counts 1 and 2 are redressable because "[i]f the Court finds liability, then the injury – failure to receive the $500,000 Accelerated Benefit Payment – is, in fact, redressable, <u>as Sun Life would pay it out</u>." (Pl.' Opp'n Mem. at 19 (emphasis added).) However, Plaintiff's brief: (1) says nothing further on this point; (2) does not identify what type of equitable relief against <u>Nikon</u> would result in <u>Sun Life</u> "pay[ing] . . . out" benefits; and (3) says nothing about the possibility of Plaintiff obtaining a money judgment against the Nikon Defendants—the only potentially relevant relief specifically sought in the SAC.

After considering Plaintiff's arguments and the allegations in the SAC—including that Count 3 is premised on the same factual allegations as Counts 1 and 2 and also appeared to seek, without any explanation, the same relief—the R&R recommended dismissal of Counts 1 and 2 as duplicative of Count 3.

3

The Court disagrees with the R&R's recommendation because—although not mentioned by Plaintiff in any fashion—a plaintiff who brings claims under § 1132(a)(3) may seek the equitable remedies of equitable estoppel, surcharge and reformation against a defendant. Sullivan-Mestecky, 961 F.3d at 99 (finding that plaintiff could pursue each of these forms of equitable relief in § 1132(a)(3) suit against Verizon alleging breach of fiduciary duties). Although these are formally types of equitable relief, a plaintiff who obtains such relief may ultimately receive a money judgment. For example, "surcharge" is equitable "relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty." Id. at 102 (quoting CIGNA Corp. v. Amara, 563 U.S. 421, 422 (2011)). Plaintiff could have cleared up the confusion her pleading created by explaining in her brief that she was seeking such equitable relief for Counts 1 and 2. Nevertheless, the Court concludes that, based on Sullivan-Mestecky, Plaintiff can pursue these equitable remedies for Counts 1 and 2. Whether she can ultimately establish a breach of fiduciary duty and entitlement to one or more of these equitable remedies can be addressed further at summary judgment.

In light of the above, dismissal of Counts 1 and 2 at this stage would be premature. Plaintiff may be able to obtain such equitable relief—including a money judgment through surcharge—if she prevails on her breach of fiduciary claims in Count 1 or 2. Moreover, her success on Count 3 is, at this stage of the litigation, far from certain. Because Plaintiff has "not yet succeeded on [her] § [1132](a)(1)(B) claim, and it is not clear at the motion-to-dismiss stage of the litigation that monetary benefits under § [1132](a)(1)(B) alone will provide her a sufficient remedy," it is simply "too early to tell if [her] claims under § [1132](a)(3) are in effect repackaged claims under § [1132](a)(1)(B)." New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp., 798 F.3d 125, 134 (2d Cir. 2015).

Because the Court denies the Nikon Defendants' request to dismiss Counts 1 and 2 as duplicative of Count 3, the Court must reach the merits of the Nikon Defendants' arguments that Counts 1 and 2 fail to allege plausible claims.

## B. Plausibility of Plaintiff's Claims in Counts 1 and 2

### 1. Standard for Motion to Dismiss under Rule 12(b)(6)

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint "that offers only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557).

### 2. Dismissal of the Plan

The Court dismisses Counts 1 and 2 against the Plan because a plan is not a fiduciary. See Rubinstein v. CIGNA Life Ins. Co., No. 11-CV-1750, 2011 WL 13377767, at *6 (E.D.N.Y. Sept. 27, 2011) (collecting cases).

### 3. Analysis of Count 1 Against Nikon

The Court finds that the SAC plausibly alleges the breach of fiduciary claim set out in Count 1 against Nikon.

Given all the circumstances, the allegations in the SAC are sufficient to allege at least a plausible claim for relief, including the allegations that:

(1) Nikon knew Mr. Sarno had a terminal illness—namely, stage IV pancreatic cancer, (SAC ¶¶ 5, 40–42);

(2) his life insurance included a generous Accelerated Benefit, which Mr. Sarno was qualified to receive and which would have provided a payment of $500,000 before his death, (SAC ¶¶ 6, 38, 43);[2]

(3) Mr. Sarno spoke with Nikon representatives on multiple occasions about his benefits, including his life insurance, (SAC ¶¶ 7, 45–46);

(4) Nikon never said anything to Mr. Sarno about the Accelerated Benefit, (SAC ¶¶ 46–48); and

(5) Mr. Sarno died in September 2019.

The SAC's allegations are enough to allege a plausible claim to allow Plaintiff to proceed to discovery against Nikon.

Count 1 addresses accelerated benefits under Mr. Sarno's life insurance policy. The majority of the caselaw in this area involving related factual scenarios and claims concerns insurance conversion rights and other benefits. While the outcomes of these cases (and the other cases cited by the parties) are not always consistent and can be very fact-dependent, Plaintiff has

---

[2] It appears that under the Group Policy, if Mr. Sarno had received the Accelerated Benefit, he not only would have received $500,000 immediately, but his beneficiaries would have still received the remaining balance of his life insurance benefit when he died so long as he continued to maintain coverage. (Group Policy at 15–16.)

alleged at least a plausible claim under Count 1 against Nikon.[3]

There is limited caselaw concerning fiduciary duty claims involving accelerated death benefits under life insurance policies. Nevertheless, the few cases that exist suggest that Plaintiff may ultimately be able to prevail on this claim. For example, in Skiles v. E.I. Dupont de Nemours & Co., the court concluded that the plaintiff's "numerous contacts with various benefits and personnel people" after her diagnosis of terminal lung cancer "should have been sufficient to put Defendants on notice of [Plaintiff's] eligibility for [accelerated death benefit] and Defendants' failure to provide information about that benefit option made their communications with Plaintiffs materially misleading."[4] Skiles v. E.I. Dupont de Nemours & Co., No. 03-CV-239, 2005 WL 991661, at *10 (E.D. Tenn. Jan. 25, 2005); cf. Pfeil v. Edward Kraemer & Sons, Inc., No. 09-CV-390, 2010 WL 2219061, at *4–5 (W.D. Wis. June 1, 2010) (granting employer summary judgment on claim that employer's failure to mention accelerated death benefit breached fiduciary duty, but stating that "one could certainly craft a colorable claim for breach of [defendant's] fiduciary

---

[3] See Eddy v. Colonial Life Ins. Co., 919 F.2d 747 (D.C. Cir. 1990) (finding breach of fiduciary duty where insured asked employer about unavailable "continued" coverage, but employer said nothing about "converted" coverage that was available to the insured); Bixler v. Central Pennsylvania Teamsters Health & Welfare Fund, 12 F.3d 1292 (3rd Cir. 1993) (finding that employer may have breached its fiduciary duty when spouse whose husband had just passed away asked about the availability of "death benefit," and employer said nothing about the availability of COBRA benefits); Est. of Foster through Foster v. Am. Marine SVS Grp. Benefit Plan, 840 Fed. App'x 170, 173–74 (9th Cir. 2021) (finding employer had fiduciary duty to disclose information concerning life insurance conversion given, inter alia, plaintiff's severe illness, which should have made the employer "realize[] that [plaintiff] would be interested in maintaining his life insurance coverage and would need information about precisely when he would need to act to do so"); Erwood v. Life Ins. Co. of N. Am., No. 14-CV-1284, 2017 WL 1383922, at *8–11 (W.D. Pa. Apr. 13, 2017) (finding, after bench trial, breach of fiduciary duty where, at meeting with employer representatives, the plaintiff's spouse indicated a desire to keep benefits "the same" and representatives discussed other benefits but said nothing about life insurance conversion rights); Keith v. Metro. Life Ins. Co., No. 15-CV-1030, 2017 WL 1026008, at *4–5 (S.D. Tex. Mar. 15, 2017) (denying summary judgment and finding that employer's failure to notify plaintiff of conversion rights could constitute a breach of fiduciary duty given extraordinary facts of the case, including the employer's knowledge of decedent's condition and employer's active involvement in claims process and communications with insurer); see also Krohn v. Huron Mem. Hosp., 173 F.3d 542 (6th Cir. 1999); Echague v. Metro. Life Ins. Co., 43 F. Supp. 3d 994, 1016–22 (N.D. Cal. 2014); Fed. Ins. Co. v. Am. Home Assur. Co., 102 F. Supp. 3d 1354, 1355–56 (N.D. Ga. 2015).

[4] The Skiles court ultimately granted summary judgment for the defendant on this fiduciary duty claim because precedent at the time—which has since been overruled by Amara, 563 U.S. 421—precluded the plaintiff from obtaining the equitable relief she sought to remedy this violation.

duties . . . based on [HR representative's] failure to even mention during her in-person meeting" the decedent's "contractual right to living benefit," and suggesting that such a claim might be viable in the Second Circuit, which the court characterized as having more lenient standards than the Seventh Circuit).[5]

Plaintiff has sufficiently alleged that Nikon may be liable on Count 1. Whether Plaintiff can ultimately prevail on this claim against Nikon may depend on what exactly was said by Mr. Sarno and Nikon's representatives during these conversations about his life insurance and other benefits. The Court will consider that question further, based on a complete record, at summary judgment.[6]

### 4. Analysis of Count 2 Against Nikon

In contrast to Count 1, the Court finds that Plaintiff has not plausibly alleged that Nikon is liable under Count 2.

Count 2 is primarily focused on the acts and omissions of Sun Life concerning Mr. Sarno's attempts to convert his Group Policy. The SAC, however, also alleges that:

> Nikon, as Mr. Sarno's employer and the Plan Sponsor and Plan Administrator identified in the Group Policy SPD, had a fiduciary duty to ensure that Mr. Sarno was fully cognizant of his conversion right and of any applicable deadlines. Nikon also had a duty to ensure that Sun Life, as Nikon's agent, fulfilled its fiduciary responsibilities to the Sarnos.

(SAC ¶ 111.)

---

[5] In Sullivan-Mestecky, the Second Circuit reiterated that it has not decided whether "an ERISA fiduciary may breach a duty because of unintentional misrepresentations even when the SPD is clear if there is no evidence that the plaintiff knew or should have known of the applicable SPD provisions at the time of the relevant conduct." 961 F.3d at 104; see also id. (stressing, inter alia, that "[i]n responding to [the insured's] queries about her policy, Verizon never referred [her] to clear plan terms that would have alerted her to her ineligibility for the promised benefits").

[6] The Court acknowledges that, in advance of a mediation that occurred prior to the filing of the Motion, Plaintiff received the benefit of some discovery from Defendants, including the administrative record, recordings of Sun Life's telephone conversations with Mr. Sarno, and copies of any relevant correspondence between Nikon and Mr. Sarno. (Nikon Defs.' Mem. at 5, ECF No. 45-1.) Plaintiff, however, alleges that Mr. Sarno had multiple "conversations" with Nikon about his life insurance coverage and other benefits prior to his passing. (SAC ¶¶ 45–46.) Those conversations were apparently not recorded, Mr. Sarno is deceased, and those Nikon employees were not deposed before the mediation.

Plaintiff appears to assert three potential theories of liability against Nikon. None of these theories, however, constitute plausible claims.

First, Plaintiff suggests that Nikon is vicariously liable for Sun Life's actions because Sun Life was Nikon's agent. The SAC, however, alleges that Sun Life was acting as a fiduciary. (SAC ¶¶ 23, 94–110.) Fiduciaries are generally not liable for a breach of fiduciary duty committed by a co-fiduciary. 29 U.S.C. § 1105, which addresses potential liability when a co-fiduciary breaches a fiduciary duty, states:

> In addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
>
> (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a).

Plaintiff does not plausibly allege that Nikon is liable for Sun Life's acts and omissions under any other these provisions.[7]

Second, Plaintiff's brief suggests that she is pursuing a failure to monitor claim against Nikon. See 29 U.S.C. § 1105(a)(2); Schultz v. Texaco Inc., 127 F. Supp. 2d 443, 452 (S.D.N.Y.

---

[7] The allegations in the SAC do not plausibly suggest that Sun Life was acting as a non-fiduciary in its communications with Mr. Sarno. Plaintiff stresses that, in its answer, Sun Life asserts that Nikon—and not Sun Life— owed Mr. Sarno a fiduciary duty. However, there are no allegations in the SAC that support Sun Life's claim that it was not acting as a fiduciary. If discovery were to reveal that Sun Life was, in fact, not acting as a fiduciary and was instead acting as a non-fiduciary agent of Nikon, the Court may permit Plaintiff to amend her complaint to allege a claim against Nikon based on such evidence. See Sullivan-Mestecky, 961 F.3d at 96, 104 (finding that the gross negligence of Aeon Hewitt, a ministerial agent who administered Verizon's benefits center, could be imputed to Verizon). However, at this time, the SAC does not contain any plausible claim that Nikon is responsible for Sun Life's acts and omissions alleged in Count 2.

2001) ("Where, as here, a plan provides for the allocation of fiduciary responsibility, the person allocating the fiduciary responsibilities . . . is not liable for acts or omissions of the person to whom fiduciary responsibility is allocated . . . except to the extent that the allocation itself is a breach of fiduciary duty."). The SAC, however, does not explicitly allege any such claim. Moreover, the factual allegations in the SAC do not plausibly allege Nikon failed to monitor Sun Life. Plaintiff merely alleges that Nikon "had a duty to ensure that Sun Life, as Nikon's agent, fulfilled its fiduciary responsibilities to the Sarnos" and that Nikon breached this duty in some unspecified manner. (SAC ¶¶ 111–12.) That is insufficient to plausibly allege a failure to monitor claim. See Struve v. Electrolux Home Prods., No. 17-cv-8158, 2019 U.S. Dist. LEXIS 29631, at *12 (N.D. Ill. Feb. 25, 2019) ("Plaintiff's conclusory allegations that Defendants failed adequately to monitor Prudential are insufficient to state a claim.").

Third, Plaintiff asserts that Nikon is directly liable for Count 2 because, allegedly, Nikon had "a fiduciary duty to ensure that Mr. Sarno was fully cognizant of his conversion right and of any applicable deadlines" and Nikon breached this duty in some unspecified manner.

The SAC alleges that the SPD for the Group Policy set out Mr. Sarno's conversion rights. The SAC also alleges that Mr. Sarno discussed those conversion rights with a Sun Life representative. Specifically, the SAC alleges that:

> On July 22, 2019, shortly after leaving the hospital, Mr. Sarno spoke over the telephone with a Sun Life CSR about converting his Group Policy to an Individual Policy. The CSR told Mr. Sarno that he could convert to an Individual Policy affording him a $761,000 life insurance benefit for an estimated monthly premium of $2,992.
>
> [] On the July 22 Call, Mr. Sarno confirmed that he wanted to "go ahead with" converting to an Individual Policy providing for $761,000 of life insurance coverage.

(SAC ¶¶ 54–55.) The SAC suggests that Mr. Sarno was aware of his conversion rights prior to the July 22 call and there are no explicit allegations to the contrary. The SAC does not allege that

10

Nikon was aware of the contents of the July 22 call or that Mr. Sarno spoke with anyone at Nikon after the July 22 call. Additionally, the SAC does not allege: (1) when Mr. Sarno learned about his conversion rights; (2) whether, and when, he received any written notices of his conversion rights; (3) what, if anything, Nikon and Sun Life employees told him about his conversion rights before and after July 22, 2019. Given the allegations in the SAC, Plaintiff has not plausibly alleged that: (i) Nikon had, under these circumstances, a broad "fiduciary duty to ensure that Mr. Sarno was fully cognizant of his conversion right and of any applicable deadlines"; or (ii) that Nikon breached that purported duty or any other potential fiduciary duty concerning the conversion rights. Notably, with respect to Count 2, it is not even clear what Plaintiff is alleging Nikon should have done or said concerning the conversion rights.[8]

While the Court finds that the SAC does not plausibly allege that Nikon is liable under Count 2, Nikon will be participating in discovery given its potential liability under Count 1. Evidence concerning the Acceleration Benefit and conversion rights are intertwined and both will be the subject of discovery. If discovery were to reveal any additional facts that would allow Plaintiff to plausibly allege that Nikon is liable under Count 2 the Court may permit Plaintiff to amend the complaint accordingly.

**C. Dismissal of Count 3**

Counts 3 states:

**Pursuant to 29 U.S.C. § 1132(a)(1)(B), to Recover Benefits Due Under the Plan**

116. Mrs. Sarno repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

---

[8] By contrast, Count 1 alleges that Nikon did not inform Mr. Sarno about the Acceleration Benefit and plausibly suggests that Mr. Sarno was not aware of the Accelerated Benefit.

> 117. As set forth in the preceding paragraphs, Defendants breached their fiduciary duties to the Sarnos by (i) failing to adequately inform Mr. Sarno of his immediate right to an Accelerated Benefit Payment of $500,000, and (ii) affirmatively misleading Mr. Sarno about his deadline to submit his application to convert his Group Policy to an Individual Policy.
>
> 118. As a result of Defendants breach of their fiduciary duties, Mrs. Sarno, the designated beneficiary of the Group Policy and Individual Policy, was denied (i) a $500,000 Accelerated Benefit Payment, as well as (ii) all death benefits due to her under the terms of the Individual Policy.
>
> 119. Mrs. Sarno is entitled to a Judgment against Defendants awarding her the principal sum of (i) the $500,000 Accelerated Benefit Payment, and (ii) all death benefits due to her under the terms of the Individual Policy.

(SAC ¶¶ 116–19.)

29 U.S.C. § 1132(a)(1)(B) authorizes a beneficiary "to bring a civil action 'to recover benefits due to him under the terms of his plan.'" Sullivan-Mestecky, 961 F.3d at 97 (quoting § 1132(a)(1)(B)). "Essentially, plaintiffs assert under this section a 'contractual right under a benefit plan.'" Devlin v. Empire Blue Cross & Blue Shield, 274 F.3d 76, 82 (2d Cir. 2001) (quoting Strom v. Goldman, Sachs & Co., 202 F.3d 138, 142 (2d Cir. 1999)); see Amara, 563 U.S. at 436 ("[The] statutory language of [§ 1132(a)(1)(B)] speaks of 'enforc[ing]' the 'terms of the plan,' not of changing them."); cf. Varity Corp. v. Howe, 516 U.S. 489, 511–12 (1996) (explaining that "a plan administrator engages in a fiduciary act when making a discretionary determination about whether a claimant is entitled to benefits under the terms of the plan documents" and that § 1132(a)(1)(B) "provides a remedy for breaches of fiduciary duty with respect to the interpretation of plan documents and the payment of claims").

It is not clear how Count 3 alleges a "contractual right" for benefits that are "due . . . under the terms of the plan" or to "enforce . . . [any] rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). For example, Plaintiff alleges, in Count 3, that Defendants "fail[ed] to adequately inform Mr. Sarno of his immediate right to an Accelerated Benefit Payment." The terms of the Group Policy, however, do not appear to require that either Nikon or Sun Life inform participants

12

of the Accelerated Benefit (and Plaintiff has not suggested otherwise). While Plaintiff may have a viable claim that Nikon had a fiduciary duty to inform Mr. Sarno of the Accelerated Benefit and that Nikon breached that duty, such a claim would appear to be more properly brought pursuant to § 1132(a)(3), not § 1132(a)(1)(B).

The Nikon Defendants, however, did not move to dismiss Count 3 for failure to state a claim on the ground that Mr. Sarno was not entitled to receive notice about the Accelerated Benefit (or that payment of the Accelerated Benefit itself was not "due") "under the terms" of the Group Policy or on any similar ground. Instead, Nikon argued that that Count 3 failed because Nikon was not responsible for determining claims or paying benefits under the Group Policy (or under the individual policy Plaintiff would have received by exercising his conversion rights under the Group Policy). The Nikon Defendants also argued that Count 3 should be dismissed against them because Plaintiff lacked standing to bring this claim against both Nikon and the Plan.

The R&R recommends that Count 3 be dismissed against both Nikon and the Plan because Plaintiff failed to allege Article III standing. Plaintiff objects and insists that both the Plan and Nikon are proper parties.

With respect to the Plan, the Court declines to adopt the R&R's recommendation of dismissal. The Second Circuit has held that a plan is a proper defendant in a § 1132(a)(1)(B) suit even where, as here, the plan contracted with an insurance company that promised to pay the plaintiff if she qualifies for benefits. Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 509 (2d Cir. 2002). In Chapman, the Second Circuit explained that:

> We see no reason why such a liability should not arise upon a beneficiary's claim of entitlement to receive benefits from the plan. The Plan's argument to the effect that it may not be sued because it has contracted with [the insurer] to make payments to Plan beneficiaries is wholly unsupported by the language of the statute.

13

Id. at 509. Based on Chapman, the Court denies the Plan's motion to dismiss the claim in Count against it.[9]

As for Nikon, the Court agrees with the R&R that given the allegations in the SAC, Nikon should be dismissed from Count 3. Courts have dismissed § 1132(a)(1)(B) claims against employers who are named as plan administrators when the plaintiff alleges that another party was responsible for denying the plaintiff's claim for benefits and the plaintiff fails to plausibly allege that the employer/named administrator exercised some degree of control over that decision. See Pro. Orthopedic Assocs., PA v. Excellus Blue Cross Blue Shield, No. 14-6950, 2015 WL 4387981, at *9–12 (D.N.J. July 15, 2015). The SAC has not plausibly alleged that Nikon was responsible for denying her claim for benefits. The Court also agrees with the R&R that this dismissal should be without prejudice. In Pro. Orthopedic Assocs.—a case relied on by the R&R—the court dismissed the employer/named administrator, but made clear that "if, during the course of discovery, [the plaintiff] obtains information that evinces that [the employer] did have some degree of control over the decision to deny her application for benefits, she may move to amend the Complaint at that time." Id. at *12. The Court will follow the same approach here.

---

[9] While the Court declines to dismiss the Plan given the Second Circuit's decision in Chapman, the Court notes that—because Sun Life is also a defendant for Count 3—the inclusion of the Plan as a defendant seems to have "limited practical consequence." Donald T. Bogan, *The Silliness of ERISA: The Plan Is Not the Only Proper Party Defendant in an ERISA Benefits Claim*, 16 MARQ. BENEFITS & SOC. WELFARE L. REV. 395, 434 n.88 (2015) (explaining that when participants are allowed to "sue the plan sponsor or plan insurer or any other obligor on the employee benefit plan contract the fact that they may also sue the plan as an entity will have limited practical consequence").

14

D. **Conclusion**

For the reasons stated above, the Court adopts the R&R in part and overrules it in part. The Court: (i) dismisses Counts 2 and 3 against Nikon; (ii) dismisses Counts 1 and 2 against the Plan; and (iii) otherwise denies the Motion.

**SO ORDERED.**

Dated: March 31, 2024
Central Islip, New York

                                                    /s/   (JMA)
                                         JOAN M. AZRACK
                                         UNITED STATES DISTRICT JUDGE